UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEJAY A. STEELE,<br><br>            Plaintiff,<br><br>    vs.<br><br>A. ENENMOH, et al.,<br><br>            Defendants. | 1:11-cv-01578-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br>(Doc. 11.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

**I.    BACKGROUND**

Tejay A. Steele ("Plaintiff") is a state prisoner proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on September 19, 2011. (Doc. 1.) Plaintiff filed the First Amended Complaint on October 14, 2011, and the Second Amended Complaint on February 6, 2012. (Docs. 6, 7.) On July 25, 2014, the court dismissed the Second Amended Complaint for failure to state a claim, with leave to amend. (Doc. 8.) On October 28, 2014, Plaintiff filed the Third Amended Complaint. (Doc. 11.)

The Third Amended Complaint is now before the court for screening.

## II. SCREENING REQUIREMENT

The in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). "Rule 8(a)"s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

## III. THIRD AMENDED COMPLAINT

Plaintiff is presently incarcerated at the Correctional Training Facility in Soledad, California. The events at issue in the Third Amended Complaint allegedly occurred at the California Substance Abuse Treatment Facility (SATF) in Corcoran, California, when Plaintiff was incarcerated there. Plaintiff names as defendants Dr. Anthony Enenmoh, Dr. Edward Grossman, Nurse Rashanda Dickson, Warden Kathleen Allison, and Dr. Olga Beregovskaya.

Plaintiff alleges that he is near-sighted and legally blind without corrective lenses. On October 23, 2008, Plaintiff was transferred to SATF and allowed to retain his contact lenses in

his possession.  On November 18, 2008, Dr. Rotman provided Plaintiff with a six-month chrono for saline solution to care for his contact lenses.

On January 8, 2009, Ophthalmologist Sofinski informed Plaintiff that he was required to try wearing eyeglasses before his contact lens chrono would be renewed, due to a new policy limiting which patients would be provided with a contact lens chrono.  Plaintiff was provided with an eyeglass prescription and one additional supply of contact lenses.

Plaintiff wore the eyeglasses and experienced severe pain.  In June and July 2009, Plaintiff filed requests for medical care to defendant Nurse Dickson and other medical staff, informing them of his pain and concern that his eyes were being damaged.  Defendant Dickson did not schedule an immediate exam.  Plaintiff's contact lens supply was low, and he was forced to wear the eyeglasses or his expired pair of contact lenses.

On July 14, 2009, Plaintiff was scheduled by Nurse Dickson to see defendant Dr. Sofinski, who confirmed that the eyeglasses prescription was inaccurate.  Dr. Sofinski told Plaintiff that correction of his vision with contact lenses, rather than eyeglasses, would be more effective, due to the disparity of his vertex distance.  Dr. Sofinski told Plaintiff that defendant Dr. Enenmoh would make the final decision whether Plaintiff could have contact lenses.  After the exam, Nurse Dickson belittled Plaintiff, accusing him of being a malingerer to obtain contact lenses.  Nurse Dickson told Plaintiff he would not be seeing Dr. Rotman for a temporary contact lens chrono as ordered by Dr. Sofinski.

On July 15, 2009, Plaintiff was examined by defendant Dr. Grossman who agreed that his vision could be better corrected with contact lenses, but that contact lenses were not a medical necessity.  After the exam, Nurse Dickson brought Plaintiff's new prescription to him but would not discuss his concerns that the strength of the prescription was markedly different than his contact lens prescription.  Plaintiff filed two medical services forms expressing his concerns that the new prescription was inaccurate.

On July 21, 2009, Plaintiff filed the first of several memoranda to defendant Dr. Enenmoh and Dr. Beregovskaya outlining his eyeglass problems in detail.  Plaintiff did not receive a reply.  On August 7, 2009, Primary Care Physician Dr. Peters ordered Plaintiff

additional saline solution and submitted a referral for Plaintiff to be examined by an ophthalmologist. Plaintiff received a letter from a private optometrist discussing the benefits of contact lenses and forwarded it to his doctors and Warden Allison. Plaintiff filed requests to be seen at the medical clinic, which was supervised by defendant Nurse Dixon. Plaintiff was told that he would not be seen as requested by his primary care physician, but instead would be seen as ordered by the ophthalmologist. This was a deviation from medical care policy which Plaintiff attributes to Nurse Dickson. Plaintiff received notice in November 2009 from Dr. Beregovskaya that his contact lens chrono would not be renewed, per the July 29, 2008 policy memo.

On December 31, 2009, Plaintiff's wife contacted R.N. Ybarra, a nurse at SATF in charge of the Patient Advocacy Program, who requested an exam for Plaintiff to determine suitability for contact lenses and the possibility of Lasik eye surgery by a private physician at no cost to the state. On January 5, 2010, Dr. Rashid examined Plaintiff, noted the July 29, 2008 memo about contact lenses, and asked Plaintiff to write to the Chief Medical Officer (Dr. Enenmoh) about having Lasik surgery. On February 2, 2009, Dr. Rashid indicated to Plaintiff that Lasik surgery and contact lenses were not medically indicated in Plaintiff's medical file, and that he should obtain eyeglasses as provided by the state.

On March 1, 2010, Plaintiff's wife again wrote to Warden Allison asking for Lasik surgery for Plaintiff, indicating that all costs would be provided in advance and expressing Plaintiff's continuing problems with the eyeglasses. Defendant Dr. Beregovskaya replied to Plaintiff's wife, indicating that no medical indication exists for the performance of Lasik or contact lenses. Dr. Beregovskaya cited cost as a determining factor under state law, which was not applicable in Plaintiff's case.

On April 18, 2010, Plaintiff filed a request for medical services, noting his severe headaches and dizziness from wearing eyeglasses. Plaintiff was scheduled and would be ducated.

On May 11, 2010, Plaintiff's wife again wrote to Warden Allison requesting reconsideration of the request for Lasik surgery, noting that another inmate housed at SATF,

4

Phillip Spector, had been allowed by Defendants to receive treatment by private physicians for tooth repair, which did not meet the standard for medical necessity forming the basis of Dr. Beregovskaya's denial of Plaintiff's request for Lasik surgery.  She also noted a CDCR spokesperson's statement in the L.A. Times that "inmates can seek to visit private physicians or dentists if they can afford to not only pay for treatment, but cover the state's transportation and security costs."  (Doc. 11 at 22:18-20.)

On May 23, 2010, Plaintiff submitted another request for medical services, informing Nurse Dickson that his headaches were becoming intolerable and other inmates had been seen by the optometrist ahead of him.  The clinic only replied, "You are scheduled and will be ducated."  (Id. at 23 ¶58.)  R.N. Page told Plaintiff that she and other staff believed it was wrong that another inmate was able to obtain treatment by his private physician, but Plaintiff's requests were denied.  She offered to testify for Plaintiff if he decided to file an equal protection claim.

On June 30, 2010, Plaintiff was examined by Dr. Grossman who informed Plaintiff that the previous eyeglass prescription from July 15, 2009 was incorrect, causing Plaintiff's pain and suffering.  Dr. Grossman provided a new prescription, which was later found to be incorrect.

On July 1, 2010, Warden Allison denied Plaintiff's wife's request for reconsideration under CCF § 3350.1(b) which provides "surgery not medically necessary shall not be provided," with cost as a determinative fact.  Plaintiff contends that Lasik eye surgery should be deemed medically necessary because it is not cosmetic or elective surgery, and Plaintiff's vision disorder is a physical eye birth defect.  Plaintiff's wife appealed the denial, and the appeal was denied in mid-2012.

On August 7, 2010, Plaintiff submitted a request to the Office of Administrative Law requesting a determination whether the July 29, 2008 memorandum prohibiting contact lens solution being dispensed in many situations was an "underground regulation" in violation of the Administrative Procedures Act.  (Id. at 26 ¶69.)  Plaintiff also filed an inmate medical care appeal which was denied at the Director's Level of Review on March 29, 2011.

On September 17, 2010, the Office of Administrative Law suggested that Plaintiff contact the Federal Receiver regarding the July 29, 2008 memo regarding contact lens solution. Plaintiff did so and received a reply letter declining his request as inapplicable to the Federal Receivership.

On November 10, 2010, Plaintiff was again examined by Dr. Grossman, who negligently stated that the June 30, 2010 prescription provided by him was correct, implying that Plaintiff was a malingerer, stating, "This is just a mean, mean prison. They won't let you have contacts." (Id. at 28 ¶76.)  Plaintiff observed Dr. Grossman throwing a document from Plaintiff's medical file in the wastebasket. At the end of the exam, Plaintiff retrieved the exam notes from the wastebasket and was forced to relinquish it to Officer Pilgrim. Another inmate saw Officer Pilgrim return the document to Dr. Grossman, who returned it to the wastebasket and later alleged he was "transferring notes." (Id. at 29 ¶78.)

On December 21, 2010, Plaintiff submitted a claim to the California Victim Compensation and Government Claims Board (CVCGCB) regarding the events at issue. On December 27, 2010, Plaintiff sent a letter to the Prison Law Office regarding his inadequate vision care. On December 29, 2010, and January 11, 2011, Plaintiff sent letters to SATF's CEO V. Colunga regarding his vision care problems. According to defendant Dr. Enenmoh, the first letter was sent to him for response. On January 27, 2011, Plaintiff sent another letter to CEO Colunga and defendant Dr. Enenmoh.

On February 9, 2011, Dr. Enenmoh sent Plaintiff to Fresno for an off-site ophthalmology/optometry consultation. Plaintiff did not have his glasses with him at the time of the examination, because he did not know he was going to an off-site consultation. Therefore, Plaintiff had worn his expired contact lenses. At the consultation, Dr. Nguyen found that the previous eyeglasses prescriptions from Dr. Grossman were wrong and were the cause of the severity of Plaintiff's adverse effects. Dr. Nguyen provided a new eyeglasses prescription but not a "pupil distance." (Id. at 31 ¶85.)  On February 23, 2011, Plaintiff received a letter from Dr. Enenmoh dated February 8, 2011, informing Plaintiff that he would be evaluated by an independent optometrist.

On March 29, 2011, Plaintiff's medical care appeal was denied at the Director's Level of Review, and Plaintiff sent the denial to the Prison Law Office as requested. On May 11, 2011, Plaintiff received notice from the CVCGCB that his issues were outside their scope and appropriate for resolution in the court system.

On May 23, 2011, Plaintiff was taken to see Dr. Rashid who determined that Plaintiff's "pupil distance is 64mm." (Id. at 31-32 ¶90.) Dr. Grossman had determined that Plaintiff's pupil distance was 66mm, 65mm, and 63mm on separate occasions, and Dr. Sofinski determined it was 65mm. Plaintiff alleges that pupil distance does not change, and the inconsistencies illuminate Dr. Grossman's deliberate indifference or negligence.

For more than 20 months, Plaintiff suffered symptoms such as debilitating migraine headaches, constant dizziness, severe burning pain and sharp shooting pains in his eyes, vision abnormalities, blurred vision, painful muscle spasms, irritability, reduction in motivation to exercise, fatigue, dry eye syndrome, and emotional distress, affecting Plaintiff's ability to read, write, and work.

In November 2011, Dr. Enenmoh approved Dr. Kokor's request for Plaintiff to be provided with a permanent contact lens and supplies chrono, and on March 2, 2012, Plaintiff received the chrono. Plaintiff seeks a permanent injunction to ensure his chrono and saline solution order are not rescinded. Plaintiff also requests monetary damages, declaratory relief, and attorney's fees.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the

deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 743-44.

### A. Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a

delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chosen was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff has demonstrated that he had a serious medical need, because the eyeglasses provided to him caused him debilitating migraine headaches, constant dizziness, severe burning pain and sharp shooting pains in his eyes, vision abnormalities, and emotional distress. Plaintiff argues that Lasik surgery or contact lenses are medically necessary to prevent his serious symptoms. However, Plaintiff has not specifically alleged facts that any of the Defendants deprived him of contact lenses, or disapproved a contact lens chrono, knowing that

///

a proper eyeglass prescription was not possible. Moreover, Plaintiff indicates that he was wearing contact lenses at his most recent outside appointment.

Plaintiff has not alleged facts demonstrating that any of the Defendants acted with deliberate indifference. Deliberate indifference is a high legal standard. Toguchi, 391 F.3d at 1060. Plaintiff has not shown that any Defendant acted, or failed to act, while knowing of and consciously disregarding a serious risk to Plaintiff's health. Therefore, Plaintiff fails to state a medical care claim under the Eighth Amendment.

### B. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Plaintiff argues that his rights to equal protection were violated because another inmate was approved for outside medical treatment and Plaintiff was not. The mere fact that two inmates both requested to see private doctors for outside medical treatment does not make them similarly situated for purposes of the equal protection clause. Moreover, Plaintiff has not

///

shown that he was intentionally treated differently. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

### C. State Law Claims

Plaintiff brings claims against Defendants for violation of various California state laws. Plaintiff is advised that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the Court fails to find any cognizable federal claims in the Third Amended Complaint. Therefore, Plaintiff's state claims fail.

## V. CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff's Third Amended Complaint fails to state any claims upon which relief can be granted under § 1983 against any of the Defendants. In this action, the Court previously granted Plaintiff an opportunity to amend the complaint, with guidance by the Court. The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that pursuant to 28 U.S.C. § 1915A, this action be dismissed with prejudice for failure to state a claim upon which relief may be granted under § 1983, and that this dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Vittorio, 658 F.3d 1090, 1098 (9th Cir. 2011).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v.

Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated: **June 22, 2015**              **/s/ Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE